UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RAISER,<br><br>                      Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO et al.,<br><br>                      Defendant. | Case No.: 3:14-CV-2263-CAB-WVG<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 39,40,47,48] |

This matter is before the Court on the parties' cross motions for summary judgment. The motions have been fully briefed and the Court deems them suitable for submission without oral argument. For the reasons set forth below, Plaintiff's motion for partial summary judgment is granted in part and denied in part, and Defendants' motion for summary judgment is granted in part and denied in part.

**I.    Background**

On December 10, 2014, at approximately 9:42 p.m., San Diego County Sheriff's Deputy Jeremy Banks saw Plaintiff Aaron Raiser sitting in a car in a parking lot of a shopping center in Fallbrook, California. The car was parked sideways across multiple parking spaces, and according to Deputy Banks, appeared to be full of trash. According to Deputy Banks' declaration, but not supported by any other evidence from Defendants, the area where the car was parked "is frequently the site of narcotics violations, public

drunkenness, and lewd acts associated with bar patrons" of a nearby bar. [Doc. No. 39-2 at ¶ 5.]

Deputy Banks radioed for backup and then approached the car. The entire encounter was recorded by Raiser on a cell phone. Banks first asked Raiser how he was doing. Raiser responded by asking if he was being detained, to which Banks responded in the affirmative. Banks proceeded to question Raiser about why he was parked there, and Raiser responded that he was doing his laundry at a laundromat in the shopping center. Around this time, Deputy Mark Cahill arrived. Banks then asked Raiser to exit the car. Banks held Raiser's arm as he exited the car, and then conducted a pat-down search for weapons. After this search, Banks instructed Raiser to sit on a curb and continued to question Raiser about his reasons for being in the parking lot.

While Raiser was sitting on the curb, he complained of being bitten by ants, so the deputies told Raiser he could sit on the bumper of Banks' car instead of on the curb. Banks then took a picture of Raiser "for the Sheriff's files" and let him go. The entire encounter lasted approximately 10 to 11 minutes.

Based on this encounter, Raiser, acting *pro se*, asserts claims against San Diego County and Deputies Banks and Cahill under 42 U.S.C. § 1983 for violation of his Fourth and Fourteenth Amendment rights based on an unreasonable search and seizure and the use of excessive force, as well as claims for battery and negligence. Defendants have filed a motion for summary judgment as to all claims. Raiser has filed a motion for partial summary judgment on the § 1983 claims.

**II.   Legal Standards on Summary Judgment**

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing

law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248).

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *See Celotex Corp.*, 477 U.S. at 322-323. If the moving party can demonstrate that its opponent has not made a sufficient showing on an essential element of his case, the burden shifts to the opposing party to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Qualified Immunity

Deputies Banks and Cahill first argue that they are entitled to qualified immunity. In considering a claim for qualified immunity, the court engages in a two-part inquiry of: 1) whether the officer's alleged conduct violated a constitutional right; and 2) whether the right was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, viewing the facts in the light most favorable to the party asserting the injury, Raiser, the Court considers whether the facts alleged show the deputies' conduct violated Raiser's Fourth Amendment right to be free from unreasonable searches and seizures. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009).

Raiser argues that the stop and search on December 10, 2014, violated his Fourth Amendment rights. The Fourth Amendment "protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Utah v. Strieff*, __ S.Ct. __, 2016 WL 3369419, at *4 (U.S. June 20, 2016). Raiser was entitled to the protection of the Fourth Amendment on the evening of December 10, 2014. "The question is whether in all the circumstances of this on-the-street encounter, his right

to personal security was violated by an unreasonable search and seizure." *Terry v. Ohio*, 392 U.S. 1, 9 (1968).

The Fourth Amendment requires that searches and seizures be reasonable to protect an individual's reasonable expectation of privacy from being "subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *United States v. Faulkner*, 450 F.3d 466, 472 (9th Cir. 2006). "Each element, the stop [seizure] and the frisk [search], must be analyzed separately; the reasonableness of each must be independently determined. *Ramirez*, 560 F.3d at 1022 (quoting *United States v. Thomas*, 863 F.2d 622, 628 (9th Cir. 1988)).

### A. The Detention

Not every encounter between a police officer and a citizen constitutes a seizure under the Fourth Amendment. *Faulkner*, 450 F.3d at 469. The Supreme Court has found that law enforcement officers may pose questions, ask for identification and request consent to search provided they do not induce cooperation by coercive means. *United States v. Drayton*, 536 U.S. 194, 201 (2002). However, when an officer by means of physical force or show of authority, has in some way restrained the liberty of a citizen, a seizure has occurred within the meaning of the Fourth Amendment. *Faulkner*, 450 F.3d at 469; *Terry*, 392 U.S. at 16 (holding that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person").

A brief investigatory stop of a person is a permissible seizure under the Fourth Amendment if the officer's action is supported by reasonable suspicion. Reasonable suspicion requires an officer must be able to articulate facts creating grounds to suspect that criminal activity "may be afoot." *Ramirez*, 560 F.3d at 1020. A court must "consider 'the totality of the circumstances-the whole picture' when evaluating reasonable suspicion. *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). To justify a seizure, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. 1, 21 (1968). Further, those specific and articulable facts, and inferences therefrom, must "form

a basis for *particularized* suspicion," meaning that the totality of the circumstances "arouse a reasonable suspicion that *the particular person being stopped* has committed or is about to commit a crime."  *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (*emphasis* in original); *cf. Sialoi v. City of San Diego*, __ F.3d __, 2016 WL 2996138, at *5 (9th Cir. May 24, 2016) ("Where no facts specific to the arrestees establish probable cause, officers may not rely on general background facts to immunize themselves from suit.").

Here, the parties do not dispute that a seizure occurred for Fourth Amendment purposes.  The entirety of Banks's justification for approaching and detaining Raiser was that: (1) at approximately 9:42 p.m. on December 10, 2014, Raiser was sitting in a parked car full of trash; (2) the car was parked across three spaces in a dark and empty parking lot; (3) most businesses in the shopping center were closed but that a nearby bar was open at the time; and (4) the car was parked in an area that "is frequently the site of narcotics violations, public drunkenness, and lewd acts associated with bar patrons."  Based on these facts, Banks approached Raiser in the car and asked him what he was doing.  Raiser responded by asking if he was being detained, at which point Banks detained him for an investigatory stop.  Raiser disputes that the parking lot was dark and empty, asserting that there was ample street lighting, that a drive thru restaurant was open nearby, and that he was in the middle of doing laundry at a 24 hour laundromat located in shopping center.  Raiser also disputes Banks's characterization of the "high-crime nature of the area."[1]  Although the reasonable suspicion analysis typically requires taking the facts in the light

---

[1] Defendants offer no support for Banks' assertion that the stop occurred in a "high crime area."  In light of the lack of factual support for this assertion, the Court gives it little weight in its analysis here.  *See generally United States v. Montrero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000) ("The citing of an area as 'high-crime' requires careful examination by the court, because such a description, unless properly limited and factually based, can easily serve as a proxy for race or ethnicity. District courts must carefully examine the testimony of police officers in cases such as this, and make a fair and forthright evaluation of the evidence they offer, regardless of the consequences.").

most favorable to Raiser, even Banks's version of the facts do not justify the detention here.[2]

At the point when Banks detained Raiser, there is no evidence of any specific facts that could have caused a reasonable officer to reasonably suspect that Raiser himself committed a crime or that criminal activity was afoot. Defendants do not argue that Raiser was violating any laws by parking across multiple spaces in the parking lot, and Raiser's presence at night in an area where crime has occurred in the past, even if it is a "high crime area," is not sufficient grounds for reasonable suspicion that Raiser was engaged in criminal activity. *Illinois v. Wardlaw*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."). Therefore, when Banks detained Raiser he violated Raiser's Fourth Amendment right to be free from unreasonable seizures.

Having determined that Banks's detention of Raiser violated Raiser's constitutional right to be free from unreasonable seizures, the Court must determine whether that right was clearly established at the time. To that end, the Ninth Circuit recently noted that "it has long been clearly established that it is unlawful to conduct an investigatory stop and search unsupported by reasonable suspicion." *Sialoi*, __ F.3d __, 2016 WL 2996138, at *8 (citing *Ramirez*, 560 F.3d at 1023). Here, as discussed above, none of the facts identified by Banks as supporting his seizure of Raiser were sufficient to cause reasonable suspicion that *Raiser* in particular was engaged in criminal activity. *Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011) ("In order to form a reasonable suspicion, an officer must have 'specific, articulable facts which, together with objective and reasonable inferences, form

---

[2] Raiser filed a separate motion to strike portions of Banks's declaration in support of Defendants' motion in which Banks provides his recollection of the circumstances that he claims gave him reasonable suspicion to stop and search Raiser. Raiser argues that these parts of the declaration contradict Defendants' written discovery responses, contain improper opinion, and are confusingly vague. The Court need not address Raiser's arguments because even assuming the truth of Banks's declaration, the stop and search were unreasonable and violated Raiser's Fourth Amendment rights.

6

the basis for suspecting that the particular person detained is engaged in criminal activity.'") (quoting *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000)). Accordingly, it would have been clear to a reasonable officer that the seizure of Raiser was unlawful. Banks, therefore, is not entitled to qualified immunity for the seizure.

### B. The Pat-Down Search

In *Terry*, the Supreme Court held that "an investigatory stop (temporary detention) and frisk (patdown for weapons)" is constitutionally permissible if two conditions are met:

> First, the investigatory stop must be lawful. That requirement is met in an on-the-street encounter, *Terry* determined, when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.

*Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009). Therefore, because Deputy Banks' investigatory stop of Plaintiff was unlawful, his subsequent frisk of Plaintiff was unlawful as well. *Liberal*, 632 F.3d at 1079 (holding that when the initial stop was unlawful, the subsequent frisk was not reasonable either). Moreover, even assuming that Deputy Banks' investigatory stop of Plaintiff was reasonable and lawful, the subsequent pat-down search violated Plaintiff's Fourth Amendment rights.

"Whereas the purpose of a *Terry* stop is to further the interests of crime prevention and detection, a *Terry* frisk is justified by the concern for the safety of the officer and others in proximity." *Thomas v. Dillard*, 818 F.3d 864, 875-76 (9th Cir. 2016). Thus, "[a] lawful frisk does not always flow from a justified stop." *Id.* at 876 (quoting *United States v. Thomas*, 863 F.2d 622, 628 (9th Cir. 1988)). As the Supreme Court explained in *Terry*:

> [I]t is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a 'search.' Moreover, it is simply fantastic to urge that such a procedure performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with his hands raised, is a 'petty indignity.' It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly.

*Terry*, 392 U.S. at 16-17.  Accordingly, "nothing in *Terry* can be understood to allow a 'generalized cursory search for weapons' or indeed, any search whatever for anything but weapons." *Ramirez*, 560 F.3d at 1022 (citing *Ybarra v. Illinois*, 444 U.S. 85, 93-94 (1979)).

"[A] frisk of a person for weapons requires reasonable suspicion that a suspect 'is armed and presently dangerous to the officer or to others.'" *Thomas*, 818 F.3d at 876 (quoting *Terry*, 392 U.S. at 24).  "To establish reasonable suspicion a suspect is armed and dangerous, thereby justifying a frisk, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry*, 392 U.S. at 21).  As with the stop, reasonable suspicion requires consideration of the totality of the circumstances.  *Id.* "Importantly, [however], reasonable suspicion must be individualized: '[e]ven in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be conducted.'" *Id.* at 877 (quoting *Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990)).  "Facts merely establishing that *if* an individual were armed he would be dangerous are insufficient if there was no reason to believe that the individual *was* armed." *Ramirez*, 560 F.3d at 1022 (emphasis in original).

Here, Deputy Banks declares that because Plaintiff's "car was full of what appeared to be trash and possibly contained weapons, and we were in a dark area," he asked Plaintiff to exit the car and then conducted a pat-down search.  Banks, however, never articulates any specific facts that led him to suspect that Plaintiff would have a weapon in his car in the first instance.  That trash in Plaintiff's car would conceal a weapon is not cause for suspicion that Plaintiff would have a weapon in his car.  More importantly, Deputy Banks offers no specific and articulable facts that gave him a reasonable suspicion that Plaintiff had a weapon *on his person*, as is required to justify a pat down search.  The trash in Plaintiff's car and darkness of the area, viewed as part of the totality of the circumstances,

did not give Banks reason to believe Plaintiff was armed and dangerous. Accordingly, the pat-down search violated Plaintiff's Fourth Amendment rights.

Having determined the existence of a constitutional violation, the Court must determine whether the right violated was clearly established at the time of its occurrence. There is little question here that it was. "The standard for judging the objective reasonableness of an officer's actions has long been and remains today the totality of the circumstances." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (internal quotation marks omitted). Moreover, in 2009, five years before the incident here, the Ninth Circuit stated that "it was clearly established that every pat-down is unreasonable unless it is supported by the officer's reasonable suspicion that the person to be frisked is armed and dangerous." *Ramirez*, 560 F.3d at 1023. Thus, based on the lack of any facts that would support a reasonable suspicion Raiser had a weapon on his person, it would have been clear to a reasonable officer that a pat-down of Raiser was unlawful. As a result, Banks is not entitled to qualified immunity on the pat-down search.[3]

### C. Duration of the Detention

Raiser also argues that Banks and Cahill violated his constitutional rights by prolonging the seizure to take his photograph. As the Ninth Circuit has explained:

> In evaluating the reasonableness of the length of Plaintiff's detention, we take care to consider whether the police were acting in a swiftly developing situation and emphasize that we should not indulge in unrealistic second-guessing of the officers' actions. We also consider whether a suspect's actions contribute to the added delay about which he complains. Finally, we determine whether in attempting to confirm or dispel his suspicions of illegal activity, the officer used threats of force, unnecessary delays, exaggerated displays of authority or other coercive tactics.

---

[3] Cahill was not present at the initiation of the stop, and Plaintiff concedes that "Cahill did not engage in any unlawful search of Plaintiff so is not liable for those wrongs." Accordingly, the Court need not determine whether Cahill has qualified immunity for Plaintiff's claims arising out of the initiation of the stop and the frisk.

*Liberal*, 632 F.3d at 1080-81 (internal quotation marks, citations, and ellipses omitted). "The critical inquiry is whether the officers 'diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *United States v. Torres–Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).

Defendants do not even attempt to justify the length of the detention or the photograph of Raiser as related to any investigation of whatever suspicions they had that Raiser was engaged in criminal activity. Rather, Banks claims that the picture was "for the Sheriff's files," and conclusorily states that it did not prolong the detention. In other words, the photograph had nothing to do with the investigation of any criminal activity by Raiser or that it was necessary to dispel suspicions of illegal activity. Further, that it may not have taken much time for Banks and Cahill to take the picture does not mean that it did not prolong the detention at all. In any event, the deputies fail to provide any justification for the length of the detention in total, including whatever additional time resulted from the photograph. Because Defendants do not articulate any grounds for continued reasonable suspicion of Raiser, even if Banks had the right to stop Raiser in the first instance, the length of the detention violated the Fourth Amendment's proscription of unreasonable seizures. *Cf. Rodriguez v. United States*, 135 S.Ct. 1609, 1616 (2015) (holding that police may not extend an otherwise completed traffic stop, absent reasonable suspicion, to conduct a dog sniff).

"At the time of his detention, the law was clearly established that a prolonged seizure without a valid investigatory purpose was unreasonable in violation of the Fourth Amendment." *Liberal*, 632 F.3d at 1079-80; *see also Florida v. Royal*, 460 U.S. 491, 501 (1983) ("This much [] is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."). Accordingly, because Banks and Cahill did not have an investigatory purpose behind prolonging the detention to photograph Raiser, they are not entitled to qualified immunity with respect to Raiser's length of detention claims based on the photograph.

### IV. Excessive Force/Battery

"In an assault and battery claim against a police officer under state law, a plaintiff must show that the officer used unreasonable force." *Jaramillo v. City of San Mateo*, 76 F.Supp. 3d 905, 925 (N.D. Cal. 2014); *see also Saman v. Robbins*, 173 F.3d 1150, 1157 n.6 (9th Cir. 1999) ("A prima facie case for battery is not established under California law unless the plaintiff proves that an officer used unreasonable force against him to make a lawful arrest or detention."); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998) (holding that a plaintiff must prove unreasonable force as an element of a battery claim against a police officer). Here, the only physical contact either officer made with Raiser was to hold his arm. They also instructed him to sit on the curb, and when he complained of being attacked by ants, they told him he could sit on the bumper of Banks's vehicle. No reasonable juror could find that Banks or Cahill used excessive or unreasonable force based on these facts. Accordingly, Defendants' motion is granted as to Raiser second claim for excessive force under § 1983, and his third claim for battery.

### V. Negligence

"[T]o prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 629 (2013) (internal brackets omitted). It is a "long-established principle of California negligence law that the reasonableness of a peace officers' conduct must be determined in light of the totality of the circumstances." *Id*. at 632.

In the second amended complaint, Raiser alleges that Defendants had a duty of care not to cause him injury or pain, and that they breached that duty by forcing him to exit his car, sit in an awkward position on the curb, and then sit on the bumper of the patrol car. Raiser contends that while sitting on the curb, he was attacked by ants, and that sitting on the bumper of the patrol car aggravated a pre-existing knee injury. However, Raiser's only evidence of any physical injuries incurred during the stop is his declaration that he had to pick ants off his body for about two hours, which he described only as an "annoyance,"

and that the stop aggravated his knee injury by "no more than 10%." Raiser also declared that he "had no idea sitting on the front bumper [of the patrol car] would aggravate my knee injury."

Viewed in a light most favorable to Raiser, the deputies did not breach any duty of care by holding his arm, instructing him to sit on the curb, or by instructing him to sit on the bumper. Further, the deputies' actions were not the proximate cause of Raiser's physical injuries. *See generally Proctor v. Felker*, No. S-08-3158 JAM GGH P, 2009 WL 4828739, at *4 (E.D. Cal. Dec. 9, 2009) ("To establish proximate cause, the plaintiff establish that it was forseeable to defendants that injury to plaintiff would result from their actions."). Considering that Raiser did not even know that sitting on the bumper would aggravate his knee injury, it could not have been foreseeable to the deputies that ordering him to sit there would cause such an injury. Accordingly, Defendants are entitled to summary judgment on the negligence claim as well.

### VI. *Monell* Claims Against County of San Diego

Defendant the County of San Diego separately moves for summary judgment on the grounds that Plaintiff cannot satisfy the requirements of *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). According to *Monell*, a municipality may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. "A municipality cannot, however, 'be held liable under § 1983 on a respondeat superior theory.'" *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell*, 436 U.S. at 691).

Raiser claims that the County is liable based on its failure to adequately train deputies. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by [] prior cases—can a city be liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). "That a

particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390-91.  "Moreover, for liability to attach . . . the identified deficiency in a [] training program must be closely related to the ultimate injury." *Id.* at 391. Thus, a claim against a municipality that its failure to train employees resulted in a deprivation of constitutional rights "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.* at 392.

"'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)). Thus, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62.  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

In support of his claims against the County, Raiser attaches various officer training manuals and argues that they are not sufficiently detailed.  Raiser also attaches a "summary" of lawsuits in which the plaintiff purportedly alleged excessive force or unreasonable searches and seizures by San Diego County deputies.  Raiser's evidence does not create an issue of material fact as to whether the County deliberately chose not to train its employees.  Even assuming that Raiser's list of other cases alleging excessive force against the County is competent evidence, the mere existence of twelve lawsuits over a nine year period does not reflect a pattern of similar constitutional violations.  Moreover, Raiser's vague descriptions of the cases reveal that most if not all of them concern very different circumstances, including traffic stops, allegations of excessive force against a jail inmate, and an arrest of the wrong suspect of a crime.  Viewing this evidence in a light most favorable to Raiser, no reasonable jury could find that the County intended to train

its sheriff's deputies in such a manner that would cause unreasonable searches and seizures in violation of citizens' constitutional rights. Accordingly, the County is entitled to summary judgment.

## VII. Plaintiff's Motion for Partial Summary Judgment

Plaintiff cross moves for partial summary judgment that the stop and search were unreasonable and violated his Fourth Amendment rights. As discussed above, the undisputed facts establish that Deputy Banks did not have reasonable suspicion that Raiser was engaged in criminal activity or that he was armed and dangerous and that Deputies Banks and Cahill unreasonably prolonged the detention to take Raiser's photograph. Accordingly, Raiser is entitled to partial summary judgment on his first claim as to the deputies' liability for the violation of Raiser's Fourth Amendment right to be free from unreasonable searches and seizures.

## VIII. Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 39] is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Motion for Partial Summary Judgment [Doc. No. 40] is **GRANTED IN PART** and **DENIED IN PART**. It is further **ORDERED** as follows:

1. Plaintiff's Motion to Strike Banks's Declaration [Doc. Nos. 47, 48] is **DENIED AS MOOT**;
2. Defendants Banks and Cahill's motion for summary judgment is **DENIED** insofar as it seeks a finding that they are entitled to qualified immunity;
3. Defendants Banks and Cahill's motion for summary judgment is **GRANTED** as to Plaintiff's second, third, and fourth claims, for excessive force, battery, and negligence, respectively;
4. Plaintiff's motion for partial summary judgment of his first claim for unreasonable search and seizure in violation of 42 U.S.C. § 1983 is **GRANTED** with respect to Plaintiff's claims against Banks based on the stop, the pat-down

search, and the length of the detention, and **DENIED** as to Plaintiff's other claims against Banks;

5. Plaintiff's motion for partial summary judgment of his first claim for unreasonable search and seizure in violation of 42 U.S.C. § 1983 is **GRANTED** with respect to Plaintiff's claims against Cahill based on the length of the detention and **DENIED** as to Plaintiff's other claims against Cahill; and,

6. The County of San Diego's motion for summary judgment against Plaintiff is **GRANTED**, and **JUDGMENT** is entered in favor of the County of San Diego and against Plaintiff on all of Plaintiff's claims against the County.

It is **SO ORDERED**.

Dated: June 29, 2016

Hon. Cathy Ann Bencivengo
United States District Judge